STATE OF IOWA, Appellee, v. HARRY RODEN, Appellant.

HOMICIDE: Assault with Intent—Malice—Specific Intent to Kill—
1 Evidence. Record reviewed, and held sufficient to justify a finding (a) of malice and (b) of specific intent to kill, even though defendant's conduct was inexplicable.

CRIMINAL LAW: Appeal and Error—Review—Covering Requested
2  Instruction. Error may not be predicated on the refusal to give
   requested instructions which are fully covered by those given by
   the court on its own motion. So held as to instructions on the
   question of malice and intent.

*Appeal from Pottawattamie District Court.*—THOMAS
ARTHUR, Judge.

WEDNESDAY, DECEMBER 13, 1916.

INDICTMENT for assault with intent to commit murder.
There was a verdict of guilty as alleged in the indictment,
and the judgment entered thereon. The defendant appeals.—
*Affirmed.*

*F. A. Turner,* for appellant.

*George Cosson,* Attorney General, and *John Fletcher,* As-
sistant Attorney General, for appellee.

EVANS, C. J.—The appeal is based upon two general
propositions assigning error: (1) That there was no evi-
dence either of malice or of specific intent to kill; (2) that
the trial court erred in refusing a requested instruction advis-
ing the jury that the burden was upon the State to show a
specific intent to kill.

The story of the crime charged herein is quite remark-
able. At the time of the offense, the defendant, a young man
of 18 years, was engaged as a farm hand for J. W. King.
He had been so engaged for more than two
months. The crime charged was committed
in the forenoon of October 27th. King had
left home a short time before, leaving the
defendant engaged in hauling manure. Mrs. King was alone
in the house. Shortly after the departure of King, the de-
fendant went to the house and entered the kitchen, and
there remained for some minutes before Mrs. King came into
view from another part of the house. When she came within

1. HOMICIDE: as-
sault with in-
tent: malice:
specific intent
to kill: evidence.

his sight, though still in another room, he advanced upon her with a drawn revolver and discharged the same. Seeing his attitude she lifted her left hand to her head. The bullet from his revolver passed through her hand and into her head, being imbedded in the skull bone. She fell to the floor, and he discharged at her a second shot, which, however, missed her. He thereupon picked up a broom handle and struck her once or twice while she was prostrate on the floor. He then left the house and escaped. His explanation of his conduct, as a witness herein, is that he had gone to the house to demand his wages and she had refused to pay him, and thereupon he shot at her, simply to frighten her, and without intent to kill her. As a matter of fact, he had received his wages from Mr. King on the Saturday before, which was October 23d. According to the testimony of Mrs. King, he made no request of any kind upon her, nor gave her any warning of words preceding the assault. In conversation with other persons shortly after the assault, he said that Mr. King had ''cussed'' him on the morning of that day, and that he had made up his mind to leave, and wanted his pay. He also said that Mrs. King had not been good to him for a week. The foregoing are the general and salient facts in the case. We think they are sufficient and quite abundant to show both malice and a specific intent to kill. Assuming the defendant to have been sane, it is difficult to account for his conduct on any other theory than that he was a moral pervert and capable of any crime. The only other query that can arise in our mind is whether it might have been an insane act. It appears from his testimony that his mother is in an insane asylum. The question of his own sanity was in no manner raised at the trial, and there is nothing more in this record that would justify us in finding an excuse for his conduct along that line.

As to the requested instruction above referred to, it is enough to say that, though the formal request made by the

defendant was refused, the trial court did instruct the jury,
in its own way and in connection with other

2. CRIMINAL LAW:
appeal and er-
ror: review:
covering re-
quested instruc-
tion.

instructions, that, in order to find the defend-
ant guilty as charged in the indictment, the
burden was upon the State to prove beyond a
reasonable doubt that "he intended to take the life of Mrs.
King." This met the full requirements of the law in that
regard.

We find no error in the record. The judgment below is
therefore—*Affirmed*.

LADD, GAYNOR and SALINGER, JJ., concur.